IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Paul Medlen, *et al.*,                                                                Case No. 3:05CV7201

          Plaintiffs,

v.                                                                                              ORDER


The Estate of Myles Meyers, *et al.*,

          Defendants.


      This is an employer intentional tort case. The plaintiff, Paul Medlen, was wounded when a co-worker, Myles Meyers, entered the DaimlerChrysler Toledo North Assembly Plant with a concealed shotgun, which he used to kill another employee and wound the plaintiff and another worker. Plaintiff claims that DaimlerChrysler created and had actual knowledge of a dangerous condition [i.e., the risk of Meyers's violent actions] at the plant and that it was substantially certain that harm suffered by plaintiff and the others whom Meyers assaulted and shot would occur.

      Medlen also alleges negligence against the security company, defendant Wackenhut Corporation, which DaimlerChrysler hired to provide security at the plant.

      The defendants have filed motions for summary judgment. For the reasons that follow, the motions shall be granted.

**Background**

      On the evening of January 26, 2005, Medlen was working, as assigned, during the second [4:00 p.m. - 12:30 a.m.] shift. Meyers, also assigned to the second shift, arrived at about 8:30 p.m. He entered the plant with his employee key access card, and passed through the entrance turnstiles.

Meyers had fashioned a wire harness holder to conceal a loaded 20 gauge shotgun underneath his coat. Security cameras recorded his entry, but there were no guards at the turnstile, and Meyers entered the plant as he would any other day.

Meyers went to the plant's body shop, and entered through an unlocked door.[1] He encountered Yiesha Martin, the body shop material advisor. He showed her the shotgun, and ordered her to call Roy Thacker, his team advisor, and Mike Toney, his area manager. When they arrived, Meyers opened fire, killing Thacker and wounding Toney.

Meyers left the body shop. Plaintiff Medlen encountered Meyers and greeted him with "Hey, Myles, what's up bud?" Meyers turned and shot Medlen. Meyers then returned to the body shop office and killed himself.

Meyers had worked at DaimlerChrysler for twenty-two years. His disciplinary record included written warnings for attendance violations and discipline for not ringing in his own time card. That record showed no instances of violence in the workplace. The record does indicate, however, that Meyers had had temperamental "outbursts" and on occasion been "out of control."

The night before the shootings, Meyers met with Toney and Thacker [who were his supervisors] and union representatives to discuss Meyers's work performance. At the meeting, Meyers indicated he had been sober for a number of days and he was trying to improve his work performance. The meeting ended with handshakes and Meyers agreed to pay more attention to his work.

---

[1] The door's locking mechanism was bypassed with duct tape. Anyone could, accordingly, freely enter the body shop office.

The only instance of allegedly threatening behavior that plaintiff attributes to Meyers is that at some point before the shootings Meyers stated he was "going to get" the plaintiff and others. Doc. 68, p. 147-48 (Medlen Dep.).

Medlen alleges that, particularly in light of this statement, DaimlerChrysler knew that Meyers, if permitted to return to the plant, would create a dangerous condition [i.e., pose a risk of violent harm to Medlen and others in the plant], and that ensuing harm was substantially certain to occur.

Plaintiff also alleges that plant security was inadequate to protect against the threat posed by Meyers. Plaintiff alleges defects in both the overall security arrangements and program, and, as well, negligence on the part of the defendant Wackenhut, with whom DaimlerChrysler had contracted to provide security services inside and outside the plant.

Medlen points to the lack of screening or similar measures to detect whether employees enter the plant with firearms. He notes that video cameras at the employee entrances were not monitored by DaimlerChrysler or Wackenhut. He contends further that the bypassing of the lock on the door to the body shop office enhanced the danger posed by Meyers and facilitated the shootings. Medlen also asserts that DaimlerChrysler's Workplace Violence Prevention Program [WVPP] was inadequate in both its design and implementation.

DaimlerChrysler seeks summary judgment on the basis that it was not aware that Meyers posed a risk of violent harm to its employees, and that, in any event, any danger that he may have presented was not substantially certain to have resulted in injury to plaintiff or others. It also contends that its plant security programs were adequate and conformed to industry standards.

Wackenhut asserts that it owed no duty to plaintiff, or, in the alternative, that it fulfilled any duty it may have owed to him, and that it was not negligent in its implementation of its contract with DaimlerChrysler. It also argues that additional measures, which plaintiff claims it should have implemented to protect plant personnel, including closer screening at employee entrances, were foreclosed by its contract with DaimlerChrysler.

## Standard of Review

Summary judgment will be granted if "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). Summary judgment will be denied if the evidence is such that a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, all evidence must be viewed in the light most favorable to the nonmoving party. *Id*.

## Discussion

### I. Employer Intentional Torts

In Ohio, an employer who negligently injures an employee in the workplace cannot be sued by the employee for such negligence where the employee has obtained compensation under Ohio's Workers Compensation Act, O.R.C. § 4123.74. The statute and Art. II, § 35 of the Ohio Constitution immunize employers from negligence claims arising from workplace injuries where the injured employee receives workers compensation benefits.

An injured employee can, however, recover for injuries that the employer intentionally caused. *E.g., Van Fossen v. Babcock & Wilcox Co.,* 36 Ohio St.3d 100, 110-12 (1988) (Workers Compensation Act "not intended to shield an employer from common-law liability for injuries he intentionally and maliciously inflicted upon his employees."); *Blankenship v. Cincinnati Milacron*

4

*Chemicals*, 69 Ohio St.2d 608 (1982). The employee has the burden of proving the employer's intent to injure by showing its knowledge of the dangerous condition and awareness of the substantial certainty that harm will result. *Sanek v. Duracote Corp.*, 43 Ohio St.3d 169, 172 (1989).

To prove the requisite intent to injure on the part of the DaimlerChrysler, plaintiff must prove:

> 1) the employer knew about the dangerous "process, procedure, instrumentality or condition" in the workplace; 2) the employer knew and was "substantially certain" that, if subjected to this danger in the workplace, the employee would be harmed; and 3) with the aforesaid knowledge and certainty, the employer required the employee to remain in the dangerous situation.

*Fyffe v. Jeno's Inc.*, 59 Ohio St.3d 115, 118 (1991).[2]

Mere "knowledge and appreciation" of a risk is not intent. *Fyffe*, 59 Ohio St.3d at 118. *Cross v. Hydracrete Pumping Co., Inc.,* 133 Ohio App.3d 501, 507 (1999). Proof of the employer's negligence or even recklessness does not suffice to establish intent on its part. *Sanek,* 43 Ohio St.3d at 172; *Burns v. Lawson Co.*, 122 Ohio App.3d 105, 108 (1997) ("it is not enough that the employer should have known or even that the employer was reckless."); *Hinton v. YMCA of Cent. Stark Cty.*, 2006 WL 1746111, *2 (Ohio App.) (same). To prevail, the injured employee must show that the employer had "actual knowledge of the exact dangers which ultimately caused" the injury. *Id.* (citing *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 112 (1988)).

Even where a plaintiff is able to show that the employer had knowledge of a dangerous condition, "it does not follow that [it] knew that injury to its employees was certain, or substantially

---

[2] After the decision in *Fyffe*, the Ohio General Assembly enacted O.R.C. § 2745.01 to abrogate the standard announced in *Fyffe*. The Ohio Supreme Court held § 2745.01 was "unconstitutional in its entirety." *Johnson v. BP Chems., Inc.,* 85 Ohio St.3d 298, 308 (1999). The General Assembly then enacted a revised version of § 2745.01 effective April 7, 2005. Because the statute was not effective on January 26, 2005, the date of the shooting, the *Fyffe* standard is applicable.

certain, to result." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192-93 (1988). An employer's "knowledge and appreciation of the risk of harm," without more, "is insufficient to impute knowledge with substantial certainty that [the] harm would befall its employees." *Richard v. Mr. Hero, Inc.*, 1989 WL 21245, *2 -3 (Ohio App.). Absent proof that injury was substantially certain to result from even a well-known risk of harm, the employee cannot recover on a claim of employer intentional tort. *See, e.g., Mitchell, supra*.

Medlen asserts two grounds for recovery on the basis of an intentional tort by DaimlerChrysler: 1) the company created a substantial certainty of injury when, in the face of its actual knowledge of the risk of harm that Meyers's return to the plant would create, it nonetheless allowed him unimpeded access to the plant on the day of his rampage; and 2) the design and implementation of plant security failed to conform to its actual knowledge, thereby also making injury substantially certain.

### A. Knowledge of Risk of Harm and Substantial Certainty of Injury

#### 1. Meyers as a Known Threat

Medlen alleges DaimlerChrysler knew Meyers was a dangerous threat, but took no action, thus knowingly creating a dangerous condition that was substantially likely to cause harm at the DaimlerChrysler plant. Plaintiff has, however, presented insufficient evidence that DaimlerChrysler knew of any potential risk of violence posed by Meyers. Medlen cannot, therefore, meet Ohio's exacting standard for employer knowledge of risk.

Meyers had worked at the plant for twenty-two years, and he had only been cited for a small number of minor, non-violent disciplinary infractions. The only possible indica of potential violence was a history of temperamental outbursts, having been on occasion "out of control," and his

statement that he was "going to get" Medlen. No threatening statements or actions otherwise ever came to the attention of Chrysler management. *See* Doc. 68, at p. 213 (Medlen Dep.); *see also* Doc. 61, Ex. 2, at ¶ 10 (Maxon Aff.).

The evidence does not include enough indications that Meyers might act violently toward his co-workers to impute to DaimlerChrysler the requisite knowledge about the risk of harm from allowing Meyers to re-enter the plant.

Arguably, a rational trier of fact might have a basis for finding that DaimlerChrysler was negligent when it failed to ascertain what was on Meyer's mind when he said he was "going to get" Medlen. That statement is, however, not enough, as a matter of law, to enable a trier of fact to find that DaimlerChrysler knew from that statement and its past experiences with Meyers and his behavior in the workplace that Meyers posed an actual risk of harm, or that it intended such harm to occur.[3]

---

[3]

Several cases require the plaintiff to show that the employer had "actual knowledge of the *exact* dangers which ultimately caused the injury." *See, e.g., Smith v. General Motors Corp.*, 2006 WL 559372, *666 (6th Cir.) (citing *Sanek, supra*, 43 Ohio St. 3d at 539) (emphasis supplied). While this standard, viewed most strongly against the plaintiff, would require knowledge of the risk of shooting, other cases have cautioned against reading too much into the "exact danger" language. *Burns v. Presrite Corp.*, 97 Ohio App.3d 377, 384 (1994) (stating that the "exact danger" language in *Sanek* is simply a restatement of what proof is necessary to satisfy this element of an intentional tort claim, i.e., the employee must demonstrate knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation).

I will, for purposes of this opinion, assume that proper application of the actual knowledge standard requires only a showing of knowledge that Meyers posed a risk of physical injury, whether inflicted with or without a weapon.

Medlen cannot satisfy even this lesser standard. Though the record indicates that DaimlerChrysler knew that Meyers was prone to outbursts and had threatened "to get" Medlen, such knowledge does not rise to knowledge that Meyers actually presented a risk of physical injury to Medlen or others in the plant. The gap between an ambiguous, one-time threat by a troubled and troublesome employee "to get" a co-worker and injuring that co-worker is broad. More is needed than the

7

Review of representative cases applying the "actual knowledge" standard confirms the conclusion that DaimlerChrysler did not have the requisite knowledge about the risk of harm that would arise were Meyers allowed back into the plant.

In *Taylor v. Orlando Baking Co., Inc.,* 2003 WL 22724710, *2 (Ohio App), an employee sued her employer after she had been injured by a co-worker, who had started a fight with the plaintiff. The court held that the employer lacked actual knowledge that the assailant was a threat, even though she previously had threatened another employee, been disciplined for a threat concerning use of a gun, and been reported for yelling and swearing at her supervisor. Summary judgment in favor of the employer was upheld in large part because the previous threats had been verbal, and the plaintiff had worked closely with the assailant for about five years without considering her to be a threat.[4]

Similarly, in *Bosse v. Rare Hospitality*, 2002 WL 1724053 (Ohio App.), a restaurant employee brought an intentional tort claim against his employer after a co-worker had thrown a knife at and injured him. As with Meyers in this case, "there was some evidence that [the co-worker] was 'high strung' and 'stressed,'" but, the court held, " there was nothing to suggest that he would commit the assault. . . ." *Id*. at *1. Also like Meyers, the assailant in *Bosse* had no prior record of either violent behavior in the workplace or criminal violence, "though he had engaged in some 'verbal altercations' with other employees." The court concluded, "[t]here was simply not a scintilla

---

evidence in this case to cross that gap.

[4]

Plaintiff in this case, like the plaintiff in *Taylor*, stated that, prior to encountering Meyers on the day of the shootings, he had not seriously considered him to be a threat. *See* Doc. 68, at p. 141 (Medlen Dep.).

8

of evidence that [the employer] should have known that [the co-worker] would be violent. . . ." *Id*.

In *Jasinski v. Ford Motor Co., Inc*., 1992 WL 14419 (Ohio App.), the court likewise upheld summary judgment in favor of the employer and against an auto worker who had been attacked and seriously injured by a co-worker. The plaintiff alleged that Ford should have known of the co-worker's propensity for violence because it had previously discharged him for criminal violence on Ford's premises. In addition, the assailant had been given a three-day suspension for verbally threatening a supervisor. That disciplinary record, the court stated, failed "to establish a sufficient propensity for violence to place Ford on notice of possible harm to fellow employees." *Id*. at *3.

In *Reed v. Armco, Inc*., 2000 WL 1884830, *3 (Ohio App.), an employee assaulted by three co-workers failed to show actual knowledge on the part of the employer to make it liable for an intentional tort. The court reached this conclusion despite the fact that the employee had frequently been subjected to physical harassment and assaults by fellow employees in the past. Though the employee had not reported many of those instances, the court, "assuming, *arguendo*, that appellees knew that appellant was subjected to all of the above instances of harassment by his co-workers," held that "there is no evidence in the record that appellee knew that . . . the employees involved in the January 25, 1996, incident, would physically assault appellant."[5]

---

[5]

Plaintiff has not cited and my independent research has not uncovered an Ohio case in which a court has found "actual knowledge" of the risk of injury from of a co-worker assailant on facts similar to those in this case.

Cases from other jurisdictions likewise have not held employers liable outside the workers compensation system for co-worker assaults under facts somewhat akin to those here. *See Rustin v. District of Columbia*, 491 A.2d 496, 501 (D.C. App. 1985) (plaintiffs failed to show employee's death was due to employer's "actual, specific, and deliberate intent;" showing of "negligence, or willful, wanton, reckless and unlawful misconduct," is not enough to allege an intentional tort);

The information known to DaimlerChrysler about Meyers' potential for violence and the risk of injury to others in the workplace was no greater, and was, indeed, a good bit less the information known to the employers in the foregoing Ohio cases. Those cases did not permit the intentional tort claim to go to the jury; like the plaintiffs in those cases, Medlen has not presented sufficient evidence of "actual knowledge" on DaimlerChrysler's part to satisfy that element of his claim.

### B. Injury Not Substantially Certain to Occur

Proof of whether an injury was substantially certain to occur is, as the court noted in *Emminger v. Motion Savers, Inc.*, 60 Ohio App.3d 14, 17 (1990), "by necessity a matter of circumstantial evidence and inferences drawn from alleged facts appearing in the depositions,

---

*Holderbaum v. Itco Holding Co., Inc.*, 753 So.2d 699, 699 (Fla. App. 2000) (laid off employee killed co-worker with a pistol kept at the workplace; court concluded "[employer's] mistakes in failing to remove [employee] or his weapon from the premises or to warn [decedent] prior to the shooting, neither 'exhibited a deliberate intent to injure nor . . . were substantially certain to result in injury or death' so as to constitute an intentional tort); *Evans v. Yankeetown Dock Corp.*, 491 N.E.2d 969, 975 (Ind. 1986) (killing of employee by mentally ill co-worker could not be predicted or expected).

Cases in Ohio in which employers have been found liable for injuring employees intentionally are based on far more extensive and specific knowledge of actual dangers than anything known to DaimlerChrysler in this case. *See, e.g., McKinley v. Standby Screw Machine Products Co.*, 2002 WL 1348537, *3 (Ohio App.) (worker seriously injured by an electrical shock from a machine had told the employer that the company's failure to have a lockout/tagout procedure for the machine was unsafe and in violation of federal law; company, which had refused to provide a lockout/tagout kit, knew that the worker regularly worked on the electrical units and previously had been shocked); *Cook v. Cleveland Elec. Illum. Co.*, 102 Ohio App.3d 417, 424-425 (1995) (worker injured by electrical equipment that lacked an essential safety feature, and which had been installed by an uncertified and unlicensed fellow employee; employer knew of the makeup of the equipment and the risk of injury); *Burns v. Presrite Corp.*, 97 Ohio App.3d 377 (1994) (employer was held to have known of the danger posed by electrical equipment that had sprayed dangerous sparks on three or four occasions in the past); *Patton v. J&H Reinforcing and Structural Erectors, Inc.*, 1994 WL 693929 (Ohio App.) (employer knew of risk of harm to its employees working at heights without safety belts).

affidavits and exhibits." Determination of whether a plaintiff has shown that his injury was substantially certain to have occurred, as the Ohio Supreme Court pointed out in *Kunkler v. Goodyear Tire & Rubber Co.*, 36 Ohio St.3d 135, 139 (1988), "emerges not so much from the words used to formulate the test as it does from the decisions rendered in response to specific fact situations."

To establish substantial certainty of an injury on the basis of such evidence requires more than mere knowledge of a dangerous situation: "exposure to hazardous or unusually dangerous conditions or processes is insufficient by itself to constitute a basis for bringing an intentional tort claim against an employer." *Youngbird v. Whirlpool Corp.*, 99 Ohio App.3d 740, 745 (1994).

Even if Medlen were able to show that DaimlerChrysler knew that Meyers posed a risk of harm if he were allowed unimpeded access to the plant, he has not shown, and cannot show that the injuries he suffered were "substantially certain" to occur from Meyers' re-entry onto the premises.

In several of the workplace assault cases discussed in the prior section, the courts, in addition to finding a lack of actual knowledge of a risk of harm, concluded that injury from any such harm was not substantially certain to occur. *Taylor*, 2003 WL 22724710, *2 ("none of [the assailant's] prior behavior included physical altercations of any kind or proves that [he] was a 'dangerous condition'"); *Bosse,* 2002 WL 1724053, *1 ("there was simply not a scintilla of evidence" that harm to the plaintiff or anyone else was substantially certain); *Jasinski*, 1992 WL 14419.

Other workplace injury cases support the conclusion that plaintiff cannot show that his injuries were substantially certain to occur if Meyers returned to the plant. The most compelling of these cases involved robberies and other violent offenses at convenience stores. In such cases Ohio

courts consistently have found, despite the known risks of harm confronting employees of such establishments, that injury was not substantially certain.

In *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190 (1988), a convenience store employee, who was working alone, was shot during an armed robbery. The store was in a "high crime" area, and did not have such basic security devices as alarms and cameras. The employee had not been given adequate instruction in handling violent situations. Despite these circumstances, the Ohio Supreme Court stated, " it does not follow that Lawson knew that injury to its employees was certain, or substantially certain, to result." *Id.* at 193.

In *Burns v. Lawson Co.*, 122 Ohio App.3d 105 (1997), an employee had been shot and severely injured during an armed robbery at a store [which was known as the "combat zone"] in a high crime area. The injury was not substantially certain, the court stated, despite evidence of "rampant criminal activity" at the store over the years. In reaching this conclusion, the court noted that no injuries had resulted in eight of ten armed robberies committed in the three years preceding the shooting of the employee.

In *Kirby v. Shell Oil Co.*, 1989 WL 63704, *4 (Ohio App.), a gas station employee was killed in an armed robbery. The same employee had been robbed two months earlier, and a neighboring gas station had been robbed less than a month before the robbery in which the employee was killed. Although the employer had actual knowledge about these events and the danger they represented, the court held that it was "unwilling to conclude" that the earlier robberies at the station and in the area rendered injury to the station attendant substantially certain. *Accord*, *Matthews v. Superstation, Inc.*, 2001 WL 848605, *1 (Ohio App.) ("facts revealing a lack of security devices, that the injured party worked alone, that the robbery occurred in a high crime area or that the employee did not

12

receive training in dealing with violent crimes [were] insufficient to create a question of fact on the issue of whether an employer is substantially certain of injury to its employees."); *Estate of New v. Dairy Mart Convenience Stores, Inc.*, 2001 WL 792931, *1 (Ohio App.) (murder of employee was not substantially certain despite prior violent crimes at the store, in its vicinity and at other Dairy Mart stores in nearby counties; "nothing indicated that a crime of this level of violence was substantially certain to occur. Knowledge that in general convenience stores are often the target of violent crime is not enough to meet this high standard"); *Jarrell v. Englefield, Inc.*, 2000 WL 286680, *1 (Ohio App.) (robbery-murder of employee was not substantially certain despite prior criminal activities at the store, which included "a plethora of nonviolent crimes" and two prior unarmed robberies, none of which had caused injury); *Richard v. Mr. Hero, Inc.*, 1989 WL 21245, *1 (Ohio App.) (fact that several criminal incidents had preceded abduction and rape of employee was not sufficient "to impute knowledge with substantial certainty that this harm would befall its employees."); *Englund v. Wendy's Intern., Inc.*,  1996 WL  199167, *4 -5 (Ohio App.) ("facts that might have indicated a high risk of harm inflicted by an armed robber or a high risk that an employee who was injured by an armed robber while working alone might not receive prompt medical attention, . . . do not create a question of fact [as to] . . . whether Wendy's was substantially certain that these harms would occur.")

A convenience store case to the contrary is *Bryant v. Lawson Milk Co.*, 22 Ohio App.3d 69 (1985). In *Bryant*, the plaintiff-employee had been assaulted and raped. Overruling the trial court's grant of summary judgment for the employer, the court held that evidence offered by the plaintiff created a triable issue of fact as to whether her injuries were substantially certain.

That evidence showed that the employee:

>was required to work alone on the third shift from 11:00 p.m. to 6:00 a.m.; that she had no means of communicating from the store except by pay telephone; that no security devices were provided in the store except for a mounted camera which seldom worked and on the night of the incident had no film; she received no training on personal or employee security; that defendant had experienced two hundred seventy-four robberies in its Columbus area stores in the past five years; and that in the five-year period of May 13, 1978 to May 13, 1983 there had been nine robberies at the South Fourth Street store.

*Id.* at 73.

A principal basis for the court's reversal in *Bryant* of summary judgment in favor of the employer was, moreover, its rejection of the defendant's contention that a specific intent to injure was necessary for a finding of intentional misconduct on its part. *See id.* (Syllabus ¶ 1). None of the cases finding that injury was not substantially certain presented a similarly extensive factual basis supportive of the intentional tort claim, and none involved a similar legal issue as to whether the employer had to manifest a specific intent to be held liable.

If the convenience store employees could not be found to have shown that their injuries were substantially certain, despite the manifest and known dangers that existed in their workplaces, the plaintiff in this case is not able to meet that requirement. The co-worker assault cases likewise show that as a matter of law – and perhaps in confirmation of the observation in *Reitz v. May Co. Dept. Stores*, 66 Ohio App.3d 188, 193 (1990) that "criminal behavior of third persons is not predictable to any particular degree of certainty" – that the plaintiff in this case cannot meet his burden of proving that injury was substantially certain to occur if Meyers were allowed unimpeded access to the plant.

### B. Design and Implementation of Security at the Plant

Medlen's other employer intentional tort claim alleges DaimlerChrysler, in designing and constructing the plant, failed to establish sufficient provisions and procedures to adequately ensure

14

employee security. Medlen claims the failure to design and implement sufficient protection for the employees allowed Meyers to enter the plant with a gun and subsequently injure Medlen.

The seminal case of the Ohio Supreme Court addressing security requirements in employer intentional tort claims is *Mitchell, supra*. In that case the Ohio Supreme Court held an employer had not committed an intentional tort against a murdered worker when it failed to install security devices or provide security training to staff at a convenience store in a high-crime-rate area. The court held that, although the plaintiffs could prove negligence or even recklessness, they could not prove intent, nor that the homicide was substantially certain. 40 Ohio St.3d at 193.

DaimlerChrysler had security measures in place at the time of the shooting. One of these mechanisms was its Workplace Violence Prevention Program (WVPP). The WVPP includes a Local Response Team, awareness training for employees, and an Employee Assistance Program. Although plaintiff alleges the WVPP was a flawed program and that DaimlerChrysler did not properly implement the WVPP, this is merely a claim of negligence, not of an intentional tort. *See Doe v. Hi-State Mfg. Co.*, 2001 WL 1782657, *2-3 (Ohio App.). The WVPP, and DaimlerChrysler's awareness that there had been a shooting at another plant several years earlier might show knowledge of a potential danger. Such awareness is not, however, enough to show DaimlerChrysler was "substantially certain" that Medlen would be harmed as a result of any alleged deficiencies in the plant's security arrangements.

Plaintiff has not, indeed, presented sufficient proof of actual knowledge on DaimlerChrysler's part that its security system was deficient or that any deficiencies endangered its employees. Even plaintiff's expert testified that DaimlerChrysler's perimeter security for entering and exiting the plant were "consistent with the standard" of manufacturing plants in the United

States. *See* Doc. 113, at p. 57 (Clark Dep.). The expert also testified that the lack of guards to monitor ingress into the plant was consistent with the industry standard. *Id.* at p. 183. Finally, plaintiff's expert stated it is not standard for auto assembly plants to have metal detectors at the entrances. *Id.* at p. 184.

Although Meyers was able to enter the plant with a concealed weapon, this was not a substantially certain result of any alleged or actual defects in DaimlerChrysler's security system. In Ohio, alleged lack of workplace security does not make injury substantially certain to occur. *See, e.g., New*, 2001 WL 792931, *4; *Englund,* 1996 WL 199167, *5; *Gilliam v. Mid-American Security Service, Inc.*, 1994 WL 738504 (Ohio App.).

DaimlerChrysler took precautions and its plant met the security standards of the industry as a whole. There is insufficient evidence to create a triable issue of fact as to either DaimlerChrysler's actual knowledge of any risk of harm from the alleged defects in its plant security arrangements or that injury was substantially certain to occur as a result of any such defects.

## II. Negligence Claim Against Wackenhut

Medlen alleges negligence on the part of the defendant Wackenhut, which DaimlerChrysler hired to be responsible for certain aspects of plant security. Plaintiff alleges that Wackenhut's control and monitoring of ingress was inadequate, security cameras were not monitored adequately, and the lock on the body shop office door was inoperable.

In Ohio, to prove a negligence claim, a plaintiff must show: 1) a legal duty; 2) breach of that duty; and 3) proximate cause of plaintiff's injury. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). The burden is on the plaintiff to prove each element of the test. *Whisman v. Gator Invest. Properties, Inc.*, 149 Ohio App.3d 225, 233 (2002).

Courts in Ohio apply either a "prior similar acts" standard or a "totality of the circumstances" standard to establish a duty to protect third parties. *See Reitz v. May*, 66 Ohio App.3d 188, 193-94 (Cuyahoga County 1990) ("[T]he totality of the circumstances must be somewhat overwhelming before a business will be held to be on notice of and therefore under the duty to protect against the criminal acts of others."); *see also Heyes v. Blevins*, 1997 WL 335564, *5 (Ohio App., Montgomery County) ("Some courts determine whether a danger posed by a third party was foreseeable by focusing on the existence of prior similar acts.").

Under either test, Wackenhut did not have or breach a duty to Medlen. Wackenhut had no notice or knowledge of any violent propensity by Meyers, or notice of any previous violent acts in general at the plant. Meyers was an authorized employee with a valid entrance badge: this sufficed, per Wackenhut's security contract with DaimlerChrysler, to allow him into the plant.

Whether there is a legal duty depends upon the foreseeability of the harm. *Wallace v. Ohio DOC*, 96 Ohio St.3d 266, 274 (2002); *Whisman,* 149 Ohio App.3d at 234 ("The foreseeability of a criminal act depends on the knowledge of the business owner."). The test for foreseeability is "whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77 (1984).

Wackenhut had no notice that Meyers was a potential threat, or that it should take any particular precautions with him. *See* Doc. 73, ¶¶ 2-3 (Kramer Aff.). "[I]n the absence of the requisite knowledge, appellees could not have foreseen or reasonably anticipated the decedent's injuries and, as a matter of law, cannot be held liable for negligence." *Menifee*, 15 Ohio St.3d at 77. A finding of foreseeability depends on the defendant's knowledge. *Id*. Plaintiff has not proven it was

17

foreseeable that Meyers would be violent, nor that the security system might fail to protect against whatever danger he may have presented. Wackenhut could not foresee that Meyers was a danger to others; thus it breached no duty [assuming it owed a duty] to Medlen.

Even if Wackenhut owed a duty to Medlen, Wackenhut fulfilled this duty by complying with the terms of its contract with Daimler-Chrysler. The contract did not permit Wackenhut employees to be armed. Doc. 110, at ¶ 4 (Kramer Aff.). Furthermore, DaimlerChrysler designated the security arrangements implemented by Wackenhut. *See* Doc. 63, p. 15-16 (McClain Dep.). Per DaimlerChrysler protocol, employees of the plant could enter and exit through the turnstiles, on showing a valid ID. Doc. 110, at ¶ 2 (Kramer Aff.). Wackenhut's contract with DaimlerChrysler authorized it only to monitor these coming and goings on video screens and perform random searches.

Although plaintiff claims added security should have been in place, such as guards at the entrances, DaimlerChrysler did not request or require this of Wackenhut in their contract. No stipulation existed in the contract for Wackenhut to check all the locks, or, specifically, the locks in the body shop. Furthermore, while there were doors that did not have proper locks in the body shop, it was not foreseeable that an unlocked door within the plant, after all entrants had passed the turnstile requiring a valid ID, would cause, even in part, the injuries giving rise to this suit.

Wackenhut complied with its security contract with DaimlerChrysler, and thus fulfilled any duty to Medlen as a third party. "A security company's duty to a person injured by criminal activity on the premises depends on the terms of the security company's contract with the owner of the premises." *Cole ex rel. Estate of Kopaitich v. Pine Ridge Apartments Co. II*, 2001 WL 1647126, *5 (Ohio App.) (citing *Maier v. Serv-All Maintenance*, 124 Ohio App.3d 215, 221 (1997)).

By following the terms of its contract with DaimlerChrysler, Wackenhut fulfilled any duty that may have owed to Medlen.

### III. Punitive Damages

Because the claims against DaimlerChrysler are being dismissed, it is not necessary to consider plaintiff's demand for an award of punitive damages, or the defendant's challenge to such demand in its motion for summary judgment.

### Conclusion

For the foregoing reasons, it is

ORDERED THAT defendants' motions for summary judgment be, and the same hereby are granted.

So ordered.

s/James G. Carr<br>
James G. Carr<br>
Chief Judge